UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:23-cv-221-MOC

| ALBERT CRAMER,[1] | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| MICHELLE KING, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on review of a Memorandum and Recommendation ("M&R") issued in this matter (Doc. No. 12). In the M&R, the magistrate judge advised the parties of the right to file objections within 14 days, in accordance with 28, United States Code, Section 636(b)(1)(c). Plaintiff filed an objection within the time allowed, (Doc. No. 13), and Defendant filed a Reply, (Doc. No. 16).

**I.   Background**

In November 2020, Plaintiff filed an application for disability insurance benefits, alleging disability beginning December 13, 2019. On December 21, 2022, following an administrative hearing at which Plaintiff appeared and testified, an Administrative Law Judge ("ALJ") issued an unfavorable decision. On appeal to this Court, Plaintiff alleged the ALJ's decision included the following errors: (1) "the ALJ impermissibly cherry picked the record, misquoted it, and failed to evaluate obviously probative evidence when assessing the RFC"; and (2) "the ALJ erred in his

---

[1] Bonnie Cramer, the original Plaintiff in this action, died during the pendency of this action. Her husband Albert Cramer has therefore been substituted as the named Plaintiff. See (Doc. Entry dated January 30, 2025).

1

assessment of the medical opinion of longtime treating specialist Dr. Word-Sims." (Doc. No. 9, p. 3). In a Memorandum and Recommendation dated December 4, 2024, the Honorable U.S. Magistrate Judge David C. Keesler recommended that the Commissioner's decision be affirmed. Plaintiff filed an objection to the magistrate's recommendation.

II.     **Standard of Review**

The *Federal Magistrates Act of 1979*, as amended, provides that "a district court shall make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). However, "when objections to strictly legal issues are raised and no factual issues are challenged, *de novo* review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Similarly, *de novo* review is not required by the statute "when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations." Id. Moreover, the statute does not on its face require any review at all of issues that are not the subject of an objection. Thomas v. Arn, 474 U.S. 140, 149 (1985); Camby v. Davis, 718 F.2d at 200. Nonetheless, a district judge is responsible for the final determination and outcome of the case, and accordingly the Court has conducted a careful review of the magistrate judge's recommendation.

III.    **Discussion**

In Plaintiff's objection to Magistrate Judge Keesler's recommendation, Plaintiff contends that the magistrate judge erred in affirming the ALJ's decision that Plaintiff's kidney and heart disease were not disabling. The Court disagrees and will affirm the magistrate judge's ruling.

Substantial evidence supports the ALJ's findings. First, as to Plaintiff's kidneys, the ALJ

2

noted that Plaintiff required only a preventative short period of dialysis after her December 20, 2019, discharge from hospitalization for coronary by-pass surgery. (Tr. 23). This short period of post-operative dialysis ended on January 9, 2020. (Id.). As the ALJ explained, nephrologist Dr. Winfield Word-Sims treated Plaintiff for years before her alleged disability onset date of December 13, 2019 for chronic kidney disease (CKD) at Mountain Kidney and Hypertension Associates. (Tr. 18). Dr. Word-Sims noted that she had stage 4 chronic kidney disease (not stage 4-5, as reported by Plaintiff). (Id.). In visits to Dr. Word-Sims in August 2021, Plaintiff's creatinine level was reported as 2.4/21 and in October 2021 as 2.5/20. (Tr. 812–13).[2]

In a March 10, 2020, office visit, Dr. Word-Sims noted Plaintiff's creatinine was better; she was feeling better; and she was "eager to return to work" after recuperation from her coronary bypass surgery. (Tr. 700). Dr. Word-Sims cleared Plaintiff to work half days for a month and then reassess. (Id.). Therefore, Plaintiff's nephrologist provisionally cleared her for employment three months after her alleged disability onset. As the ALJ reported, Plaintiff did return to work for a week in March 2020, but this was because she and her co-workers were laid off. (Tr. 24). Counsel told the ALJ that the record indicates that Plaintiff received some $11,000 in unemployment for 2020. (Tr. 45). As the ALJ noted, while the collection of unemployment is not dispositive of Plaintiff's disability claim, it supports a finding of not being disabled. (Tr. 24).

As for hypertension, as the ALJ noted, (Tr. 24), in July 2022 Dr. Word-Sims reported that Plaintiff's blood pressure was controlled and she was using less medication to treat her hypertension condition, which was secondary to her kidney condition. (Tr. 993). As stated in

---

[2] Creatinine is an indication of how well one's kidneys are working. Defendant notes that, according to Mount Sinai Hospital in New York, up to 1.1mg is normal for women. According to the American Kidney Fund, eGFR is an estimated number based on one's creatinine blood level. An eGFR between 15 and 30 equates to stage 4 CKD.

Gross v. Heckler, 755 F.2d 1163, 1166 (4th Cir. 1986), "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling."

Plaintiff's creatine level in July 2022 was at baseline and Plaintiff did not report any coronary symptoms. (Tr. 993). Therefore, Dr. Word-Sims advised her to discontinue taking her Aldactone medication, which treated both coronary disease and high blood pressure. (Id.). As for Plaintiff's coronary disease and coronary artery bypass graft surgery (CABG), after being discharged from the hospital for bypass surgery, a February 2020 routine follow up at Asheville Heart noted that Plaintiff reported she had no major complaints, was "progressing nicely," and was discharged from care. (Tr. 23). As the ALJ noted, later physical examinations were generally unremarkable for any cardiac symptoms. (Id.). Cardiovascular exams were rather benign, with normal heart sounds and little to no edema noted. (Id.). For example, in a visit to Parkway Medical in May 2020, despite complaining of shortness of breath (Tr. 865), Dr. Adam Corn reported finding no wheezing, no shortness of breath, and no heart symptoms that would interfere with activities of daily living. (Tr. 867). Chest x-rays taken at the Haywood Medical Center on January 4, 2021, were reported as normal. (Tr. 899). In a visit to Parkway Medical in July 2021, Dr. Corn noted that Plaintiff had normal breath sounds with good air flow and no dyspnea, and normal heart sounds without murmurs. (Tr. 853). Chest x-rays taken at the Haywood Medical Center in July 2021 showed Plaintiff's lungs and heart were generally normal despite alleged shortness of breath. (Tr. 896). In March 2022, Dr. Corn noted that Plaintiff had normal heart sounds and a normal respiratory effort with no dyspnea. (Tr. 849).

Therefore, Plaintiff's medical conditions following recuperation from bypass surgery were under baseline control. Further, the ALJ noted that Plaintiff performs "a wide range of activities including household chores, drives, attends appointments independently, walks around

4

in her yard, and provided care to her mother with whom she lives." (Tr. 24). The ALJ also noted that on July 1, 2021, Plaintiff reported to Dr. Corn that she exercised on a regular basis. (Tr. 853). See Mastro v. Apfel, 270 F.3d 171, 179 (4th Cir. 2001) (where the ALJ reasonably found that claimant's subjective complaints of pain and fatigue were not entirely credible in light of the claimant's daily activities and the negative clinical and laboratory findings of record).

Dr. Word-Sims's check-the-box November 2022 opinion questionnaire supplied by counsel (Tr. 1008), reporting that Plaintiff has never bounced back from her admission for heart surgery, which was complicated by renal failure requiring dialysis, is contradicted by his own and other medical records. Plaintiff's dialysis was only required for a recuperation period from heart surgery. (Tr. 23). Dr. Word-Sims himself cleared Plaintiff to return to parttime employment March 2020, over two years earlier. However, she was laid off along with her co-workers shortly thereafter. Although the ALJ's decision misquotes Dr. Word-Sims, leaving out the word "never" preceding the words "bounced back," the misquote is not fatal since the ALJ considered all of the evidence, as did the Judge Keesler, who also pointed out the ALJ's misquote.

On May 19, 2021, Dr. Frank Virgili opined that Plaintiff has the capacity to perform her past relevant work as a laboratory technician as generally performed in the national economy. (Tr. 68). Dr. Virgili reviewed the technical kidney findings on examination of Plaintiff on November 2, 2020, less than a year after alleged disability onset, and remarked that these laboratory blood tests "revealed no specific findings for end stage renal failure." (Tr. 67).

Moreover, during an April 8, 2021, consultative medical examination by Dr. Richard Gloor, Plaintiff admitted that no current plan exists to put her back on dialysis. (Tr. 675). Dr. Gloor noted no findings for end stage renal disease. (Tr. 679). Furthermore, Plaintiff did not exhibit any dizziness during examination by Dr. Gloor, who reported that she "arises from a

5

seated to a standing and from a supine to a seated and standing position with no difficulty." (Tr. 678). As Plaintiff walked from and back to her car, Dr. Gloor observed that her gait was fluid, heel-to-toe, and non-antalgic. (Tr. 675). While Plaintiff complained to Dr. Gloor that bilateral swelling in her lower extremities make life difficult (Tr. 676), Dr. Gloor found no swelling or effusions of her joints. (Tr. 678). Also, medical records do not indicate more than trace edema of the RLE. Id. See also (Tr. 76, 678, 69l 808, 813, 988).

In sum, as the above evidence shows, the magistrate judge correctly affirmed the ALJ's decision, which was supported by substantial evidence. "[T]he substantial evidence standard 'presupposes…a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" Dunn v. Colvin, 607 Fed. Appx. 264, 274 (4th Cir. 2015) (quoting Clarke v. Bowen, 843 F.2d 271, 272–73 (8th Cir. 1988)).

**IV.     Conclusion**

After careful review, the Court determines that the recommendation of the magistrate judge is fully consistent with and supported by current law. Further, the factual background and recitation of issues is supported by the applicable pleadings. Based on such determinations, the Court will fully affirm the M&R.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Objection (Doc. No. 13) is **OVERRULED**, and the Memorandum and Recommendation (Doc. No. 12) is **AFFIRMED**. Thus, the Commissioner's decision is affirmed.

The Clerk shall terminate the parties' briefs, which have been filed as motions. (See Doc.

Nos. 9, 11).

Signed: January 31, 2025

Max O. Cogburn Jr
United States District Judge